J-A26009-19

2020 PA Super 123

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CALVIN STEWART ALSTON :
:
Appellant : No. 1530 WDA 2018

Appeal from the Order Entered September 24, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0012015-2018

BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

OPINION BY SHOGAN, J.:                                    **FILED MAY 26, 2020**

Appellant, Calvin Stewart Alston, brings an interlocutory appeal from the trial court's September 24, 2018 order quashing a subpoena *duces tecum* served on his behalf.  After careful review, we reverse the trial court's order.

On August 3, 2018, Appellant was charged with one count of criminal homicide, one count of tampering with physical evidence, one count of persons not to possess firearms, and one count of firearms not to be carried without a license.[1] Appellant qualified for the services of the Allegheny County Public Defender's Office ("the Public Defender").  On September 11, 2018, Appellant served a subpoena *duces tecum* on the Records Custodian of the Allegheny County Medical Examiner's Office ("MEO") pursuant to Pa.R.Crim.P. 107 seeking "the autopsy report for Vera Renee Williams Butler and all reports,

_____

[1]  18 Pa.C.S §§ 2501(a), 4910(1), 6105(a)(1), and 6106 (a)(1), respectively.

documents and photographs associated with this investigation, including, but not limited to, the toxicology report, the mobile unit report, and any [MEO] section reports." Court Subpoena, 9/11/18. Appellant requested that the MEO provide the materials by September 28, 2018, the date of his preliminary hearing. *Id.* The MEO neither complied with the subpoena nor filed a motion to quash.

On September 24, 2018, the Allegheny County District Attorney ("the DA") filed a motion to quash the subpoena and sought a ruling that would prohibit the Public Defender from issuing subpoenas *duces tecum* to the MEO in any criminal case absent a showing of reasonableness. Commonwealth's Motion to Quash Subpoenas and Motion for Order of Court Pursuant to Pa.R.Crim.P. 573(E), 9/24/18. The court did not hold a hearing on the motion and granted the Commonwealth's motion the same day it was filed. The trial court entered the following order:

> AND NOW, to-wit, this 24th Day of September 2018 it is hereby ORDERED, ADJUDGED and DECREED that the subpoenas [*duces*] *tecum* issued in *Commonwealth v. Alston* and *Commonwealth v. Boulware* are hereby QUASHED.[2]

> Pursuant to Pa.R.Crim.P. 573 (E), [the Public Defender] is hereby PROHIBITED from issuing subpoenas duces tecum to the [MEO] for documentary evidence and/or investigative materials in all active criminal cases prior to the time prescribed by Pa.R.Crim.P. 573(A) absent a showing to this Honorable Court that there is a reasonable basis to subpoena said requested materials.

---

[2] A similar subpoena was served on the MEO on behalf of Joseph Boulware, whose appeal was docketed at 1531 WDA 2018.

Order, 9/24/18. Appellant filed a response to the motion to quash/motion to reconsider on September 25, 2018. The preliminary hearing was held on September 28, 2018, despite Appellant's request that the matter be continued until a decision on the subpoena issue. All charges were held for trial. Because the trial court did not rule on Appellant's September 25, 2018 motion within thirty days of the quashal order, Appellant filed his interlocutory appeal with this Court on October 24, 2018.

On November 9, 2018, after the filing of the instant appeal, the trial court held a hearing on several motions presented by Appellant, including the issue relating to the subpoena. At that hearing, the parties presented their respective legal arguments on the propriety of the September 24, 2018 order on the record, but the trial court did not vacate the order.[3] The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) Statement nor did it file a Pa.R.A.P. 1925(a) Opinion.

Appellant presents the following questions for our review:

I. Whether this Honorable Court has jurisdiction over the instant appeal pursuant to the collateral order doctrine?

II. Whether the [DA] has standing to seek to quash a subpoena *duces tecum* issued by the defense to a third party when the third party is not an agent of the prosecution?

III. Whether the trial court's order, a blanket prohibition on the [Public Defender] from issuing subpoenas *duces tecum* to

---

[3] The trial court also denied Appellant's motions to reconsider and to certify the September 24, 2018 interlocutory order for appeal, as well as a motion to stay the proceedings.

the [MEO] in all criminal cases, and which specifically applies only to the [Public Defender], impermissibly treats indigent criminal defendants different than other similarly situated criminal defendants, in violation of the federal and state constitutional principles of equal protection and due process of law?

IV. Because a subpoena *duces tecum* is presumed valid in criminal cases, the constitutional right to compulsory process entitles a criminal defendant to request any potentially exculpatory, non-privileged information, and the materials requested are not privileged, whether the trial court's order impermissibly shifted the burden of proof by requiring the defense to demonstrate that the subpoena *duces tecum* should be honored, rather than requiring the party subject to the subpoena *duces tecum* to demonstrate that it should be quashed?

V. Where [Appellant] issued a valid subpoena *duces tecum* to the [MEO], requesting materials that are neither privileged nor in the possession or control of the prosecution, whether the trial court's order quashing said subpoena *duces tecum* is unsupported by Pa.R.Crim.P. 573 (Pretrial Discovery and Inspection) as well as violates [Appellant's] federal and state constitutional rights to effective confrontation, compulsory process, due process, a fair trial, a complete defense, and the effective assistance of counsel?

Appellant's Brief at 4–5 (questions reordered for ease of disposition).

Before we reach the merits of this case, we must determine whether jurisdiction is proper. Preliminarily, we note that with respect to criminal cases, appeals are generally taken from a final order or judgment of sentence. ***Commonwealth v. Wright***, 178 A.3d 1030 (Pa. 2013); ***Commonwealth v. Horn***, 172 A.3d 1133, 1136 (Pa. Super. 2017). Despite the general rule, an appeal may be taken from a nonfinal order if the order is a collateral order, as

- 4 -

codified at Pa.R.A.P. 313 (Collateral Orders). Pursuant to Rule 313, a collateral order is defined as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Thus, under Rule 313, a collateral order is one that is 1) separate from and collateral to the main cause of action, 2) involves a right too important to be denied review, and 3) if review is postponed until final judgment, the claim will be lost. ***Commonwealth v. Blystone***, 119 A.3d 306, 312 (Pa. Super. 2015). "Whether an order is appealable under the collateral-order doctrine under Pa.R.A.P. 313 is a question of law, subject to a *de novo* standard of review, and the scope of review is plenary." ***Shearer v. Hafer***, 177 A.3d 850, 855 (Pa. 2018).

Appellant argues that jurisdiction is proper herein under Pa.R.A.P. 313. Appellant's Brief at 21–39. We agree. The first prong of the collateral-order doctrine requires that the appealed order is collateral to and separate from the main cause of action. This prong is satisfied where "it can be resolved without an analysis of the merits of the underlying dispute" or is "entirely distinct" from the underlying issues in the case. ***Blystone***, 119 A.3d at 312 (quoting ***Commonwealth v. Williams***, 86 A.3d 771, 781 (Pa. 2014)). In this case, the appealed order relates to a subpoena *duces tecum* served upon the MEO, and resolution of Appellant's issue does not require any analysis of

- 5 -

the merits of the underlying criminal case. Stated differently, the issue of whether Appellant is entitled to the information sought in the subpoena *duces tecum* is entirely distinct from whether Appellant is responsible for the death of Ms. Butler.

As to the second prong, our Supreme Court has held that a right is important if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule. ***Shearer***, 177 A.3d at 858–859. Appellant argues the issue involves a right too important to be denied review because it involves constitutional rights to compulsory process, due process, equal protection, and right to counsel. Appellant's Brief at 24–25. Moreover, we note that the language in the order at issue applies beyond the instant case and prohibits the Public Defender from issuing subpoenas *duces tecum* before the time allowed by Pa.R.Crim.P. 573(A), absent a showing of a reasonable basis, in **any** case within the county. Thus, the second prong is satisfied. ***See Commonwealth v. Kennedy***, 876 A.2d 939 (Pa. 2005) (finding that where issue implicates the work-product doctrine, impacts other litigants, and affects the manner in which defense attorneys prepare for trial, the issue satisfies the second prong).

Finally, the third prong requires us to examine whether Appellant's claim would be "irrevocably lost" if the case proceeded to final judgment. ***Spanier v. Freeh***, 95 A.3d 342, 346 (Pa. Super. 2013). Appellant argues that the third prong is also satisfied because if he is successful in his defense, his claim

will be rendered moot. Appellant's Brief at 36 (citing **Commonwealth v. Sanchez**, 82 A.3d 943 (Pa. 2013)). He also avers that his right to effective assistance of counsel attaches at the preliminary-hearing phase, but his claim that counsel was ineffective during the pretrial phase would be "rendered immaterial" at the later stages of the litigation. **Id.** (citing **Sanchez**, 82 A.3d at 943) ("Indeed, once a defendant has gone to trial and has been found guilty of the crimes or crimes charged, any defect in the preliminary hearing is rendered immaterial.")). We agree and find Appellant has satisfied the third and final prong of the collateral-order doctrine.

In his second question, in what appears to be an issue of first impression in the Commonwealth, Appellant avers that the DA did not have standing to seek to quash his subpoena *duces tecum*. Appellant's Brief at 39. Appellant claims that the DA did not have standing because the subpoena *duces tecum* was served upon a third party who is not an agent of the prosecution. Appellant's Brief at 39. When determining standing on appeal, our standard of review is *de novo* and our scope of review is plenary. **M.J.S. v. B.B.**, 172 A.3d 651, 655 (Pa. Super. 2017). Our Supreme Court set forth the following discussion of the concept of standing:

> The core concept of standing is that a party who is not negatively affected by the matter he seeks to challenge is not aggrieved, and thus, has no right to obtain judicial resolution of his challenge. A litigant is aggrieved when he can show a substantial, direct, and immediate interest in the outcome of the litigation. A litigant possesses a substantial interest if there is a discernable adverse effect to an interest other than that of the general citizenry. It is

direct if there is harm to that interest. It is immediate if it is not a remote consequence of a judgment.

*Petty v. Hospital Service Ass'n of Northeastern Pennsylvania*, 23 A.3d 1004, 1013 (Pa. 2011) (quoting *In re Milton Hershey School*, 911 A.2d 1258, 1261–1262 (Pa. 2006)). "A party has a substantial interest in the outcome of litigation if his interest surpasses that of all citizens in procuring obedience to the law." *Johnson v. American Standard*, 8 A.3d 318, 329 (Pa. 2010).

In support of his argument that the DA lacks standing, Appellant avers that the DA is not the legal representative of the MEO, and the MEO is not a law enforcement agency. Appellant's Brief at 40. Appellant further avers that the DA's concerns in this matter amount to no more than "an abstract interest in compliance with the law," and that the DA "suffers **no** harm whatsoever in an independent third party's complying with a criminal defendant's subpoena *duces tecum* … ." *Id.* at 45 (emphasis in original).

In response, the Commonwealth argues that the DA's authority to act in criminal investigations is undisputed and that the DA is the chief law enforcement officer for the county. Commonwealth's Brief at 12. It also posits that pursuant to 16 P.S. § 4241, which states, "In the exercise of his duties as contained in this subdivision, the coroner shall, so far as may be practicable, consult and advise with the district attorney,"[4] the DA can act on

---

[4] The term "coroner" refers to both the coroner and MEO. 16 P.S. § 1202-B.

behalf of the MEO to take action and preserve the integrity of the homicide investigation. Commonwealth's Brief at 13. Further, the Commonwealth cites *In re Randy Buchanan*, 880 A.2d 568 (Pa. 2005), as demonstrating that the DA has the authority to act in matters involving coroners or the MEO. Commonwealth's Brief at 13.

In **Buchanan**, a newspaper sought the release of an autopsy report and the Blair County district attorney filed a petition for a preliminary injunction and protective order to seal the autopsy report. **Buchanan**, 880 A.2d at 569–570. The trial court initially denied the petition, but on appeal this Court reversed, finding that the release of the report would hinder the criminal investigation. The newspaper appealed to our Supreme Court, which affirmed this Court's ruling. Although our Supreme Court did not specifically hold that the district attorney had standing to file the petition for a preliminary injunction and protective order, it recognized that the district attorney could control the release of information relating to a homicide investigation, which presumes the district attorney has standing to seek an injunction or a protective order where he or she deems it necessary. **Buchanan**, 880 A.2d at 577–578. Given the above precedent, we find the DA has standing to challenge a subpoena *duces tecum* served upon the MEO.[5]

_____

[5] A review of case law from other jurisdictions supports the DA's position that his office has standing in the instant case. **See People v. Spykstra**, 234 P.3d 662 (Co. 2010) (finding that district attorney had standing to seek to

We will address Appellant's third and fourth issues together. In his third issue, Appellant argues that the order, which he avers is a sweeping prohibition applying only to the Public Defender, implicates both due process and equal protection concerns. Specifically, Appellant argues, "[T]he essence of equal protection under the law is that like persons in like circumstances will be treated similarly. And although due process is not susceptible to precise definition, the phrase expresses the requirement of fundamental fairness and substantial justice." Appellant's Brief at 58 (citations omitted).

In his fourth issue, Appellant argues that the order constitutes an error on the part of the trial court because the order required a showing of reasonableness on the part of Appellant, which is an improper shift of the burden. Appellant's Brief at 48. Appellant argues that the trial court erred because a subpoena *duces tecum* is presumed valid under Pennsylvania law, and the party seeking to avoid compliance with the subpoena bears the burden of proof. *Id*. at 49.

---

quash subpoena *duces tecum* seeking all files on the victim's family computer); **Commonwealth v. Lam**, 827 N.E.2d 209 (Mass. 2005) (finding that the majority of courts interpreting Fed.R.Crim.P. 17(c) have allowed the government to challenge the issuance of subpoenas *duces tecum*); **People v. Ellman**, 523 N.Y.S.2d 13 (Crim. Ct. Bronx Co. 1987) (finding that the state attorney general had standing to seek to quash a subpoena *duces tecum* served on a state department, and noting that if the attorney general did not have standing, the department upon which the subpoena was served would have to hire counsel when its interests could be adequately represented by the attorney general).

In response, the Commonwealth asserts that Appellant's subpoena *duces tecum* constitutes an attempt to "subvert the discovery process of criminal cases, in gross violation … [of] Rule 573." Commonwealth's Brief at 18.[6] Specifically, the Commonwealth avers that Appellant is trying to access pretrial discovery that is generally not available to an accused at the preliminary-hearing stage of a criminal proceeding. *Id*. at 18. The Commonwealth further argues that the purpose of a subpoena *duces tecum* is the production of documents to be used before the court; it is not the object of the subpoena *duces tecum* to require the production of books and papers merely for the party's inspection, and the subpoena should not be used as a fishing expedition. *Id*. at 20.

Pa.R.Crim.P. 573 provides, in relevant part, as follows:

**(A) Informal.** Before any disclosure or discovery can be sought under these rules by either party, counsel for the parties shall make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute. When there are items requested by one party which the other party has refused to disclose, the demanding party may make appropriate motion. Such motion shall be made within 14 days after arraignment, unless the time for filing is extended by the court. In such motion the party must set forth the fact that a good faith effort to discuss the requested material has taken place and proved unsuccessful. Nothing in this provision shall delay the disclosure of any items agreed upon by the parties pending resolution of any motion for discovery.

**(B) Disclosure by the Commonwealth.**

---

[6] The Commonwealth does not specifically address Appellant's due process and equal protection arguments.

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g) the transcripts and recordings of any electronic surveillance, and the authority

by which the said transcripts and recordings were obtained.

(2) *Discretionary With the Court.*

(a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses;

(ii) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial;

(iii) all written and recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not; and

(iv) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

(b) If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or

tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

\* \* \*

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

**(F) Protective Orders.** Upon a sufficient showing, the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. Upon motion of any party, the court may permit the showing to be made, in whole or in part, in the form of a written statement to be inspected by the court *in camera*. If the court enters an order granting relief following a showing *in camera*, the entire text of the statement shall be sealed and preserved in the records of the court to be made available to the appellate court(s) in the event of an appeal.

Pa.R.Crim.P. 573 (A),(B)(1)(a-g), 2(a-b), E, F. In the instant case, the trial court filed its order pursuant to Pa.R.Crim.P. 573(E), which, as recited above, states the remedy for failure to follow the rules of discovery in criminal cases.

"[D]ecisions involving discovery in criminal cases lie within the discretion of the trial court." *Commonwealth v. Smith*, 955 A.2d 391, 394 (Pa. Super. 2008). We will not reverse a trial court's order absent an abuse of that discretion. *Id*. We note, however, that the trial court's discretion is

- 14 -

not unfettered. *Id*. at 395. As to the relief granted, our cases have held that Rule 573(E) requires a proportionality requirement. *Commonwealth v. Jordan*, 125 A.3d 55, 65 (Pa. Super. 2015) (*en banc*) (noting that although the trial court is accorded discretion, there are limits upon sanctions the trial court can impose).

Preliminarily, we note that there is a paucity of case law dealing with subpoenas *duces tecum* in the criminal context.[7] Most deal with discretionary discovery, which, pursuant to Pa.R.Crim.P. 573 (B)(2)(a), requires that requested items "are material to the preparation of the defense, and that the request is reasonable." *See Commonwealth v. Blakeney*, 946 A.2d 645, 660–661 (Pa. 2008) (holding that the trial court did not err in quashing a subpoena *duces tecum*, where an appellant sought the personnel files of two investigating officers, but could offer no reasonable basis for his request); *see also Commonwealth v. Mejia-Arias*, 734 A.2d 870 (Pa. Super. 1999) (finding trial court erred in quashing defendant's subpoena *duces tecum* where defendant had a reasonable basis for his request).

_____

[7] In the civil context, this Court has held that absent "facts supporting a finding that the subpoena was obtained in bad faith or that it would cause unreasonable annoyance, embarrassment, oppression, burden or expense," it was error for a trial court to grant a motion to quash the subpoena *duces tecum*. *PaineWebber, Inc. v. Devlin*, 658 A.2d 409, 416 (Pa. Super. 1995). *See also In re June 1979 Allegheny County Investigating Grand Jury*, 415 A.3d 73 (Pa. 1980) (finding that trial court did not err in denying motion to quash subpoena *duces tecum* where party presented no specific evidence of alleged financial hardship in complying with the subpoena).

Furthermore, the majority of cases involving Rule 573(E) arise following the Commonwealth's failure to produce discovery or information to a defendant. ***See, e.g., Commonwealth v. Jordan***, 125 A.3d 55, 65 (Pa. Super. 2015) (sanctioning the Commonwealth for failing reveal the identity of a confidential informant after being ordered by the court to do so). However, "[t]he remedies provided in Paragraph (E) 'apply equally to the Commonwealth or the defendant as the interests of justice require.'" ***Commonwealth v. McNeil***, 808 A.2d 950, 956 (Pa. Super. 2002). The issue before this Court involves discovery that is at least, in part, mandatory from the Commonwealth but that is requested from a third party.

The crux of Appellant's argument is that the trial court's order, as drafted, is essentially a blanket prohibition on the Public Defender, preventing it from issuing subpoenas *duces tecum* to the MEO in all criminal cases prior to the time prescribed by Pa.R.Crim.P. 573(A). Appellant's Brief at 58. Appellant avers that this blanket prohibition subjects indigent criminal defendants represented by the Public Defender to different, harsher treatment than other similarly situated criminal defendants. ***Id***. As Appellant points out,

> according to the plain language of the order, the sweeping prohibition of issuing subpoenas *duces tecum* to the [MEO] applies ***only*** to the Public Defender's Office; it does ***not*** apply to the Office of Conflict Counsel, which also represents indigent criminal defendants, ***nor*** does it apply to the criminal defense at bar, in general. Furthermore, it applies to the Public Defender's Office in ***all*** criminal cases.

Appellant's Brief at 59 (emphases in original).  Ultimately, Appellant avers this difference in treatment violates the principals of due process and equal protection.  "The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly."  *Curtis v. Kline*, 666 A.2d 265, 267 (Pa. 1995).

We need not reach the issue of the constitutionality of the order as drafted because we find the order is overly broad and constitutes an abuse of the trial court's discretion.  Rather than being directed to a specific party or defendant as contemplated by Pa.R.Crim.P. 573(E), the order precludes **any** individual represented by the Public Defender from issuing a subpoena *duces tecum* to the MEO, prior to the time prescribed by Pa.R.Crim.P. 573(A), absent a showing to the trial court that there is a reasonable basis for the requested materials.  The order goes beyond quashing the subpoena *duces tecum* filed by Appellant in the instant case or otherwise sanctioning Appellant for a violation of Pa.R.Crim.P. 573(A).  It prevents any individual represented by the Public Defender from issuing a subpoena *duces tecum* to the MEO prior to the time set forth in Pa.R.Crim.P. 573(A) without showing a reasonable basis before the trial court.  Thus, we find the order is not "just under the circumstances" because it will have ramifications beyond the instant case, impacting all defendants who are represented by the Public Defender.  Pa.R.Crim.P. 573(E).  The order as written constitutes an abuse of discretion and must be reversed for that reason.

However, even if the order was directed solely at Appellant, we would be constrained to reverse. Appellant argues that the Commonwealth is, in effect, claiming it "has exclusive power and control over all information in criminal cases." Appellant's Brief at 19. While we do not view the Commonwealth's position in that extreme of a light, we do recognize that our case law gives the Commonwealth significant control over the release of discovery as defined in Pa.R.Crim.P. 573. Although Appellant argues that the requested materials are not discoverable under the rule, the autopsy report and arguably at least some of the other requested materials do constitute discovery to be disclosed by the Commonwealth under Pa.R.Crim.P. 573(B)(1)(e)(f). The Commonwealth's control over the disclosure of discovery listed under those sections is further supported by our Supreme Court's holding in **Buchanan**, **infra**. Also, the Commonwealth is correct in that the parties shall make a good faith effort to resolve discovery issues informally before filing a motion pursuant to Pa.R.Crim.P. 573(A), and that discovery is generally not available to an accused during the preliminary hearing stage. Indeed, our Court has interpreted Pa.R.Crim.P. 573(A)'s provision that a motion for discovery from a party "shall be made within 14 days after arraignment" as mandating that discovery motions must be filed after the formal arraignment. **Commonwealth v. Jackson,** 785 A.2d 117, 119 (Pa. Super. 2001) (citing **Commonwealth v. Sanders**, 489 A.2d 207, 213 n.9 (Pa. Super. 1985)). As explained in **Jackson**, "[b]y waiting until after

the formal arraignment, the parties and the trial court are better able to ascertain the parameters of appropriate discovery." *Id*. at 199 n.4. Thus, in light of **Buchanan** and **Jackson**, we cannot conclude that it was an abuse of discretion for the trial court to require a showing of reasonableness by Appellant in order to receive the information prior to the preliminary hearing.

However, this case does not involve a motion for discovery served upon the Commonwealth; it involves a subpoena *duces tecum* served upon a third party. A subpoena *duces tecum* is presumed valid in criminal cases, and a criminal defendant is entitled to request any potentially exculpatory, non-privileged information. **Commonwealth v. McClure**, 172 A.3d 668, 695 (Pa. Super. 2017). Furthermore, the comment to Pa.R.Crim.P. 107 states that "a subpoena shall be used not only for trial but also for any other stage of the proceedings when a subpoena is issuable, **including** preliminary hearings...." Pa.R.Crim.P. 107, cmt. (emphasis added). **See also Meija-Arias**, 734 A.2d at 874-875 ("[U]nder the constitution of the Commonwealth, an accused's rights of confrontation and compulsory process attach pre-trial.") Thus, we discern some tension between Pa.R.Crim.P. 573 and Pa.R.Crim P. 107. Nonetheless, we find Pa.R.Crim.P. 573 controlling.

Pursuant to Pa.Crim.P. 573(F), the Commonwealth may seek a protective order and bears the burden of making a sufficient showing of the need for said order if it believes the discovery sought is improper or beyond the scope of Rule 573. However, we reiterate that discovery is generally not

available to a criminal defendant during the preliminary hearing stage. *Jackson*, 785 A.2d at 119. Furthermore, it is unclear exactly what discovery Appellant was seeking in this case, aside from the autopsy report. Some of the requested discovery may be considered discretionary, for which the defendant bears the burden of showing materiality and reasonableness under Pa.R.Crim.P.573(B)(2), or outside the scope of discovery. Indeed, it is well established that a defendant may not "search untrammeled through Commonwealth files in order to argue the relevance of the materials found therein." *Commonwealth v. Herrick*, 660 A.2d 51, 61 (Pa. Super. 1995). Under Pa.R.Crim.P. 573 and case law interpreting the rule, and giving full consideration to a criminal defendant's rights, we conclude that the burden shifts to the defendant to show that any discovery sought prior to the preliminary hearing is material to the preliminary hearing, and that the request is reasonable. Thus, if the order had been directed solely to Appellant in this case, we would conclude that the trial court did not abuse its discretion in requiring a showing of reasonableness. However, to issue a blanket quashal order without a hearing or giving Appellant an opportunity to respond and meet his burden was an abuse of discretion and not "just under the circumstances," as required by Pa.R.Crim.P. 573(E).[8] For this reason also, the order must be reversed.

---

[8] Because we conclude that the trial court abused its discretion under Pa.R.Crim.P 573(E), we decline to address Appellant's fifth issue.

Order reversed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2020