J-S43023-23
J-S43024-23
J-S43025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| FRANKLIN SAEL GONZALEZ | : | |
| | : | |
| Appellee | : | No. 587 MDA 2023 |

Appeal from the Order Entered April 18, 2023
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s):  CP-38-CR-0001249-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TAZWELL BERRIOS | : | |
| | : | |
| Appellee | : | No. 588 MDA 2023 |

Appeal from the Order Entered April 18, 2023
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s):  CP-38-CR-0001319-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| RICARDO BATISTA | : | |
| | : | |
| Appellee | : | No. 589 MDA 2023 |

Appeal from the Order Entered April 18, 2023
In the Court of Common Pleas of Lebanon County

J-S43023-23
J-S43024-23
J-S43025-23

Criminal Division at No(s): CP-38-CR-0001320-2022

BEFORE: McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.: **FILED: JANUARY 3, 2024**

Appellant, the Commonwealth of Pennsylvania, appeals[1] from the orders entered in the Lebanon County Court of Common Pleas, which granted the motions *in limine* of Appellees Franklin Sael Gonzalez, Tazwell Berrios, and Ricardo Batista.[2] We affirm.

The trial court set forth the relevant facts and procedural history of these appeals as follows:

> On October 15, 2022, Troopers with the Pennsylvania State Police encountered a black SUV vehicle on State Route 72 in North Lebanon Township. The vehicle displayed an

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth appealed pursuant to Pa.R.A.P. 311(d) and certified that the orders on appeal substantially handicapped the prosecution. The Commonwealth's certification alone is sufficient to establish our jurisdiction over the interlocutory orders. *See Commonwealth v. Moser*, 999 A.2d 602, 605 (Pa.Super. 2010), *appeal denied*, 610 Pa. 595, 20 A.3d 485 (2011) (noting Superior Court may not inquire into grounds for Commonwealth's good faith certification). Accordingly, these appeals are properly before us for review. *See Commonwealth v. Cosnek*, 575 Pa. 411, 421, 836 A.2d 871, 877 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion, or exclusion of Commonwealth's evidence).

[2] The cases involving the three defendants in these appeals were consolidated before the trial court and the Commonwealth filed the instant appeals after the trial court denied the motions *in limine* applicable to all three cases. The Commonwealth filed virtually identical briefs and raises identical issues for each of these appeals. As such, pursuant to Pa.R.A.P. 513, we consolidate these appeals *sua sponte*, and address them in one disposition.

- 2 -

"unknown temporary registration[."] Police saw the vehicle cross the white fog line three (3) times. As a result, the Troopers activated the emergency lights and siren on their police vehicle.

Once police activated lights and siren, the vehicle sped up until it attained a speed of 114 miles per hour. "Multiple police intervention measures" were attempted. During the chase, a bag was thrown from the driver's side of the vehicle.

The driver of the vehicle was later identified as [Appellee Gonzalez]. The front seat passenger was identified as [Appellee Batista]. A rear seat passenger was identified as [Appellee Berrios]. When police [asked Appellee] Batista for his name, [Appellee] Batista misidentified himself as "Luis Ortiz."

The SUV vehicle was towed back to the Pennsylvania State Police Barracks in Jonestown. Contraband in plain view was seized. A search warrant was obtained. The search warrant revealed the existence of marijuana and a tin foil containing approximately 50 grams of Fentanyl. In addition, eight (8) clear plastic vials of Fentanyl were also located.

The bag that was seen to have been thrown from the vehicle was obtained by police. Over two hundred (200) bags of Fentanyl and two hundred (200) vials of Fentanyl were located within the bag.

\*   \*   \*

… Criminal complaints were filed against [Appellees Batista, Barrios, and Gonzalez]. Those complaints charged each [Appellee] with violations of Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, including felony counts for possession with intent to deliver fentanyl and conspiracy. Additional charges were filed against [Appellee] Gonzalez related to his operation of the SUV vehicle and against [Appellee] Batista related to his providing a false name.

[Appellees] were arraigned in November of 2022. On

- 3 -

December 22, 2022, the Commonwealth filed a motion for consolidation. That motion was granted by [the trial court] on January 18, 2023.

[Appellees] were initially scheduled for trial during February of 2023. On January 27, 2023, [Appellee] Gonzalez sought and received a continuance until the April term of court. No record of any defense continuance request is contained in [Appellee] Batista's file. However, [Appellee] Batista signed a certificate of trial readiness on February 8, 2023[,] indicating his readiness to proceed to trial during March. As it relates to [Appellee] Batista's file, the Commonwealth filed a motion for continuance seeking to move [Appellee] Batista's trial until April. The court granted that request. A similar request for continuance was submitted by the Commonwealth relating to [Appellee] Berrios on March 14, 2023. [Appellee Berrios's] trial was also continued until the April term of [c]ourt.

As of the April call of the criminal trial list that occurred on April 4, 2023, all three cases appeared to be ready to proceed to trial. At this point, an unusual confluence of events occurred that culminated in the order [the trial court] entered following jury selection on April 17, 2023. [The] events that served as a backdrop for [the] court order of April 1[8], 2023 [are as follows:]

1. The status of Attorney Brian Deiderick

Attorney Brian Deiderick represented [Appellee] Berrios from the inception of the charges until the date on which the jury trial was cancelled. Attorney Deiderick had served as the Chief Lebanon County Public Defender for several decades. He was perhaps the most experienced criminal defense attorney in all of Lebanon County.

At some point in time during late March of 2023, Attorney Deiderick announced that he would be leaving the Public Defender's Office in order to join the Lebanon County District Attorney's Office. In order to "wrap up" pending cases, Attorney Deiderick announced that he would delay his move until after the April 2023 term of court. [Attorney] Deiderick represented to the court that he would advise all

of his pending clients about the impending move and he would not undertake representation of any defendant who complained. We thus accept that [Appellee] Berrios voluntarily chose to have Attorney Deiderick represent him at trial, presumably because he wanted to take advantage of Attorney Deiderick's vast wealth of experience.

The impending move of Attorney Deiderick to the District Attorney's Office caused [the trial] court to immediately realize that any postponement of this trial would necessarily require the appointment of a new attorney to represent [Appellee] Berrios. This dynamic would have two non-trivial implications. First, it would require months for a new attorney to become familiarized with the above file in order to try it effectively. The two other defendants, [Appellees] Gonzalez and Batista, would therefore be prevented from going to trial during these months, and both [Appellees] were incarcerated pending trial. Second, a postponement of trial would prevent [Appellee] Berrios from being represented by Attorney Deiderick, who was clearly his attorney of choice. Because of the two dynamics outlined above, [the trial] court was beyond reluctant to postpone the above-referenced cases.

2. Both sides had already received continuances

The above-referenced cases were originally scheduled for trial during the February term of court. [Appellee] Gonzalez requested a continuance until the April term of court and his request was granted. Later, the Commonwealth requested a continuance of both other cases until April. Those requests were also granted. Following the Commonwealth's request for a continuance, everyone agreed that the above-referenced cases would be tried during the April 2023 term of court. From at least the beginning of March, everyone knew that these cases were scheduled to be tried during the April term of court that commenced on April 17, 2023.

3. Everyone had agreed that the cases were trial-ready

Lebanon County maintains a call of the list procedure. An initial call of the list is typically conducted two (2) weeks to twenty (20) days prior to jury selection. The second call of

- 5 -

the list occurs during the week before jury selection. Either side can request a postponement at either call of the list. To be sure, most continuances during the initial call are proffered by the defense, and most continuances during the second call are proffered by the Commonwealth. Still, anyone could have raised an issue impacting the timing of trial at either call of the list proceeding.

In these cases, everyone agreed at the initial call of the list that the above-referenced cases should remain on the April 2023 trial list. At the second call that occurred less than one (1) week prior to trial, everyone again agreed that the above-referenced cases should remain on the trial list.

4. [Appellees] filed Motions that should have been filed earlier

One business day before jury selection, [Appellees] Berrios and Batista filed motions that were styled as motions *in limine*.[2] The motions complained that the Commonwealth did not turn over an "expert report" and information from cellular phones that were seized by police at the time of the [Appellees'] arrest. According to the defense motions, the [expert report was disclosed on April 3, 2023, and the data recovered from Appellees' cell phones was uploaded to a shared digital folder on April 6, 2023]. Despite having this "new" information in their possession [by] April [6], 2023, [Appellees] waited until one (1) day before trial to ask [the trial] court to preclude all of the information contained in the Commonwealth's untimely discovery.

_____

[2] [Appellee] Gonzalez later joined these motions.

[The trial court] met with all counsel immediately prior to the selection of a jury. [The trial court] expressed [its] displeasure to both sides. [It] chastised the Commonwealth for not producing an expert report until April and [it] chastised the defense attorneys for failing to file a motion prior to the afternoon of the business day preceding trial. [The court] told everybody that [it] would proceed to select a jury because a panel was sitting and waiting down the hallway. [The court] also advised everyone that [it] would not swear the jury in immediately so that jeopardy would

- 6 -

not attach. [The trial court] then scheduled a hearing/oral argument during the afternoon following selection of all juries.

5. The Commonwealth's untimely discovery

At the proceeding that occurred during the afternoon of jury selection, the Commonwealth acknowledged that it did not turn over its expert report until April [3], 2023. The Commonwealth also acknowledged that it did not turn over any downloads obtained by the Pennsylvania State Police from [Appellees'] cellular telephones until April [6], 2023. [The trial court] then learned that what was disclosed on April [6], 2023 was a tranche of information downloaded from [Appellees'] phones that was measured in gigabytes. At least initially, the Commonwealth did not identify for the defense what portions of this tranche would be used at trial. It was not until roughly ten (10) days later that the Commonwealth "as a courtesy" identified which portions of the cellular phone downloads would be relevant during the Commonwealth's case-in-chief.[3]

> [3] At the hearing on afternoon of April 17, 2023, the Commonwealth read one (1) passage from the cellular telephone of [Appellee] Batista that specifically referenced drugs. Another download from [Appellee] Gonzalez referenced a location where he was at a certain point in time. Apparently, this location is relevant to the Commonwealth's case-in-chief.

At the proceeding on April 17, 2023, the prosecutor vociferously proclaimed that she turned over everything she received from the State Police immediately after it was received. She also indicated that she disclosed the portions of the cellular download that she wanted to use "as a courtesy," and she did so as soon as she "discerned what it was that was relevant." So that [the trial] court is perfectly clear, [it does] not accuse the Lebanon County District Attorney's Office of intentionally withholding information that it had in its possession. [The court] believed the prosecutor when she said that she turned over what she had when she obtained it. That said, when [the court] asked why disclosure of the information was so delayed, the

- 7 -

prosecutor responded that the State Police were "too busy" to conduct the analysis of the cell phones.

During the proceeding that occurred on Monday, April 17, 2023, [the court] also learned that the Commonwealth had not—even up to that point in time—presented the defense with a copy of the search warrant used by the State Police to obtain possession and access to information on [Appellees' Batista's and Gonzalez's] cellular telephones. [The trial court] therefore directed that the Commonwealth produce those search warrants immediately for inspection by the defense. [It] also included a process by which the defense could proffer suppression arguments before the information could be used in rebuttal [in accordance with the court's order described below].

(Trial Court Opinion, filed 5/12/23, at 2-9) (unnecessary capitalization and emphasis omitted).

At the conclusion of the hearing, the court entered an order (docketed the next day, on April 18, 2023) granting in part and denying in part Appellees' motion to preclude the expert testimony of Trooper Ryan Goodling. Specifically, the court explained that Trooper Goodling would not be permitted to testify as an expert witness that the drugs were possessed with the intent to distribute as opposed to possessed for mere personal use. Nevertheless, the court permitted Trooper Goodling to testify about the street value of the drugs.

In addition, the trial court granted Appellees' motion *in limine* to exclude certain text messages on Appellee Batista's cell phone from the Commonwealth's case-in-chief. However, the court explained that the Commonwealth could utilize the text messages during rebuttal. The trial court

directed the Commonwealth to provide Appellees a copy of the search warrant used to obtain access to the phone before the start of trial the next day. The court stated that if any Appellee wished to file a suppression motion based on the search warrant, he could do so by the end of that day, and the court would conduct a hearing on the suppression motion prior to permitting the text messages to be used as rebuttal evidence. Similarly, the court granted Appellees' motion *in limine* to exclude certain text messages on Appellee Gonzalez's cell phone from the Commonwealth's case-in-chief. The court set up a similar procedure for submission of the search warrant to the defense if the Commonwealth intended to use any information from the cell phone as part of its rebuttal evidence. The following day, the Commonwealth filed timely separate notices of appeal from the orders pertaining to each defendant. Pursuant to the trial court's order, the Commonwealth filed a concise statement of errors complained of on appeal on May 8, 2023.

The Commonwealth raises the following issues for our review:

> A. Whether the trial court erred in granting [Appellees'] motion *in limine* to preclude the expert opinion of Trooper Ryan Goodling?

> B. Whether the trial court erred in granting [Appellees'] motion *in limine* to preclude the presentation of cell phone evidence?

(Commonwealth's Brief at 5).

Our standard of review of the trial court's evidentiary decisions is well settled: "When ruling on a trial court's decision to grant or deny a motion *in*

*limine*, we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa.Super. 2014). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion." ***Commonwealth v. Cook***, 231 A.3d 913, 919 (Pa.Super. 2020) (citation omitted). Rather, an abuse of discretion only occurs where the trial court has committed an error of law, or "when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will." ***Id.*** (citation omitted). Further, to the extent we are required to review the trial court's conclusions of law, "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Wilmer***, 648 Pa. 577, 583, 194 A.3d 564, 567 (2018).

In its first issue, the Commonwealth argues that the trial court erred in granting Appellees' motion *in limine* to preclude, in part, the expert opinion of Trooper Goodling. The Commonwealth insists that it did not commit a discovery violation under Pa.R.Crim.P. 573 to warrant exclusion of the proffered expert opinion. Specifically, the Commonwealth argues that it was not required to obtain an expert report concerning whether the facts concerning possession of the drugs were consistent with an intent to deliver as opposed to an intent to possess for personal use. The Commonwealth suggests that under Rule 573, the need for a report would be assessed on a case by case basis and generally "a prepared report ordinarily would not be necessary when the expert is known to the parties and testifies about the

- 10 -

same subject on a regular basis." (Commonwealth's Brief at 21-22) (quoting Pa.R.Crim.P. 573, Comment). The Commonwealth asserts that it disclosed the expert report as soon as it received it, which was two weeks before trial. The Commonwealth contends this was far enough in advance of trial that there was no prejudice to Appellees. The Commonwealth disputes Appellees' argument that they were prejudiced by not having the opportunity to retain their own expert regarding whether possession was with intent to deliver or for personal use. The Commonwealth claims Appellees could have retained their own expert regardless of whether the Commonwealth offered an expert report.

The Commonwealth further argues that the trial court abused its discretion when it precluded Trooper Goodling's expert report based on the purported discovery violation rather than granting a continuance. The Commonwealth insists that the trial court erred when it considered the fact that Appellee Berrios's counsel would not be available if a continuance were granted. The Commonwealth concludes the court's ruling precluding the Commonwealth's proffered expert testimony was erroneous, and this Court must grant relief. We disagree.

"[D]ecisions involving discovery in criminal cases lie within the discretion of the trial court." *Commonwealth v. Alston*, 233 A.3d 795, 804 (Pa.Super. 2020) (quoting *Commonwealth v. Smith*, 955 A.2d 391, 394 (Pa.Super. 2008)). Our Supreme Court has repeatedly emphasized that "[i]t

is well established in this Commonwealth that the purpose of the discovery rules is to permit the parties in a criminal matter to be prepared for trial. Trial by ambush is contrary to the spirit and letter of those rules and cannot be condoned." ***Commonwealth v. Shelton***, 536 Pa. 559, 564-65, 640 A.2d 892, 895 (1994) (citation omitted). "[A defendant's] due process rights are violated and his right to a fair trial infringed whenever he is not given all of the discoverable material evidence in advance of trial[.]" ***Commonwealth v. Hanford***, 937 A.2d 1094, 1101 (Pa.Super. 2007), *appeal denied*, 598 Pa. 763, 956 A.2d 432 (2008).

Although the trial court has the discretion to impose the remedy that best fits the circumstances for a discovery violation, "we must remember its discretion is not unfettered. In most cases, ordering a continuance will be an adequate remedy." ***Smith, supra*** at 395 (citations omitted). "A continuance is appropriate where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise." ***Id.*** "As to the relief granted, our cases have held that Rule 573(E) requires a proportionality requirement." ***Id.*** (reasoning that preclusion of testimony could be appropriate sanction for discovery violation, as long as such preclusion did not result in ultimate dismissal of the case).

Pennsylvania Rule of Criminal Procedure 573 governs discovery obligations in criminal cases, and states, *inter alia*:

**Rule 573. Pretrial Discovery and Inspection**

**(A) Informal.** Before any disclosure or discovery can be sought under these rules by either party, counsel for the parties shall make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute. When there are items requested by one party which the other party has refused to disclose, the demanding party may make appropriate motion. Such motion shall be made within 14 days after arraignment, unless the time for filing is extended by the court. In such motion the party must set forth the fact that a good faith effort to discuss the requested material has taken place and proved unsuccessful. Nothing in this provision shall delay the disclosure of any items agreed upon by the parties pending resolution of any motion for discovery.

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\* \* \*

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(2) *Discretionary With the Court.*

\* \* \*

(b) If an expert whom the attorney for the

- 13 -

Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

\* \* \*

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573 (A)-(B), (E).

The Comment to Rule 573 further provides:

Pursuant to paragraphs (B)(2)(b) and (C)(2),[3] the trial judge has discretion, upon motion, to order an expert who is expected to testify at trial to prepare a report. However, these provisions are not intended to require a prepared report in every case. The judge should determine, on a case-by-case basis, whether a report should be prepared. For example, a prepared report ordinarily would not be necessary when the expert is known to the parties and testifies about the same subject on a regular basis. On the other hand, a report might be necessary if the expert is not known to the parties or is going to testify about a new or controversial technique.

_____

[3] Paragraph (C)(2) of the Rules pertains to a defense expert and is not applicable here. **See** Pa.R.Crim.P. 573(C)(2) (related to disclosure by defendant).

- 14 -

Pa.R.Crim.P. 573, Comment.

Instantly, the trial court found that the Commonwealth committed a discovery violation when it failed to disclose its proffered expert report until the month of trial.[4] The trial court explained:

> As it relates to the Commonwealth's expert report, this was not a situation that involved delayed disclosure because of a laboratory's inability to conduct proper testing. The Commonwealth's proffered expert was a so-called "drug expert" who proposed to proffer an opinion that the drugs involved in this case were possessed for purposes of distribution. The expert's report reveals that his opinion was predicated almost entirely upon the volume of drugs that was confiscated by police. The Commonwealth knew about the volume of drugs from the date on which [Appellees] were arrested. Thus, if the Commonwealth wanted to present an expert regarding distribution of drugs, it could have procured that expert months before it did. [The trial court does] not view this situation as one involving a helpless prosecutor who had no ability to receive an expert report in a more expeditious fashion.[6]
>
>> [6] In addition, [the court explained that it] did not preclude the Commonwealth from presenting factual testimony from [its] witness as to the street value of the drugs that were confiscated. [Its] ruling simply precluded the Commonwealth from asking opinions as to the ultimate issue in dispute, *i.e.*, whether the drugs were possessed and whether they were possessed with intent to distribute.

(Trial Court Opinion at 19).

We agree with the court's analysis. The Commonwealth provided its

---

[4] The trial court also noted with displeasure that defense counsel waited until the day before trial was to commence before filing the motion *in limine* objecting to the late disclosure. (Trial Court Opinion at 18).

proffered expert report on April 3, 2023, two weeks prior to the commencement of the jury trial, and submitted the expert's CV on approximately April 12, 2023, only days before trial. (*See* N.T. Hearing, 4/17/23, at 8). The prosecutor explained at the hearing that she wanted an expert report because the "citizens of Lebanon County who don't have contact with drugs aren't going to know what the 50 grams of fentanyl means, which is why I had the expert report prepared when it became clear that this was going to be going to trial." (*Id.* at 9). Appellees indicated that had they received the expert report and expert CV sooner, "it would have afforded [them] an opportunity not just to—to have someone, an expert take a look and say whether or not Trooper Goodling was even qualified to author such a report." (*Id.* at 8). Further, Appellees explained that "Trooper Goodling is basically ratifying information which was provided to him by the affiants as far as packaging, packaging for sales and distribution, prices, and things like that. Those are all things that someone else could have taken a look at and said this is either accurate or this is inaccurate." (*Id.*)

The trial court agreed with Appellees that the late disclosure deprived Appellees an opportunity to review the Commonwealth's proffered expert opinion and determine whether they needed to hire their own expert to respond to that opinion at trial. Thus, the court ruled that it would not permit the Commonwealth to qualify Trooper Goodling as an expert or to render an opinion that the drugs were designed or intended for trafficking as opposed to

personal use. (*Id.* at 10). Instead, the court said the trooper could testify regarding his qualifications and training and testify about the street value of the drugs, and the jury would be free to decide whether the drugs were intended for personal use or delivery. (*Id.*) On this record, we see no abuse of discretion concerning the court's finding that such late disclosure constituted a discovery violation. *See Alston, supra*.

Although the Commonwealth cites to the Comment to Rule 573 and argues on appeal that an expert report was not necessarily required because "a prepared report ordinarily would not be necessary when the expert is known to the parties and testifies about the same subject on a regular basis" (*see* Commonwealth's Brief at 21-22), the Commonwealth made no argument at the hearing that an expert report was not required pursuant to this language in the Comment to the Rule. Thus, the Commonwealth's argument for the first time on appeal that no expert report was required under the facts of this case is waived. *See* Pa.R.A.P. 302(a) (stating issues not raised in trial court are waived and cannot be raised for first time on appeal).

Further, the trial court decided that a continuance would result in a significant postponement of trial and would deprive Appellee Berrios of his choice of trial counsel. Specifically, the court "recognized fully that any continuance of trial would not be brief because new counsel would have to be engaged to represent" Appellee Berrios. (Trial Court Opinion at 18). The court explained "that a continuance would necessarily prevent [Appellee

Berrios] from being represented at trial by his lawyer of choice, Attorney Deiderick." (*Id.*) The court also noted that "all three defendants were incarcerated pending trial and that the pre-trial incarceration could potentially be extended for months if [the court] were to continue the case." (*Id.* at 18-19). Finally, the court stated that "the prejudice that [it] perceived from a continuance extended far beyond mere surprise." (*Id.* at 19).

Upon review, we see no abuse of discretion concerning the court's remedy for the Commonwealth's late disclosure of Trooper Goodling's expert report. We agree with the trial court that a continuance would have been an inappropriate remedy under the unique procedural posture of this case. As the trial court noted, a continuance would have resulted in a significant additional period of pre-trial confinement for Appellees and would have required Appellee Berrios to proceed with new counsel.[5] This prejudice goes beyond mere surprise. Therefore, the court did not abuse its discretion by declining to order a continuance. *See* Pa.R.Crim.P. 573(E); *Alston, supra*; *Smith, supra*.

Furthermore, we conclude that the trial court did not err by excluding the expert opinion of Trooper Goodling that the drugs were possessed with the intent to deliver. This preclusion did not result in the dismissal of any

---

[5] We disagree with the Commonwealth's suggestion that the trial court "punished" it for the employment decision of Appellee Berrios's counsel, Attorney Deiderick. Rather, the trial court focused on the actual prejudice that all Appellees would suffer if the court granted a continuance.

charges. *See id.* Additionally, the court permitted Trooper Goodling to testify about the quantity and street value of the drugs. We see no abuse of discretion in the court's ruling on Appellees' motion *in limine* to preclude the Commonwealth's proffered expert testimony. *See Belani, supra*. Consequently, the Commonwealth's first issue merits no relief.

In its second issue, the Commonwealth alleges that the trial court erred in granting Appellees' motion *in limine* to preclude cell phone data recovered from Appellees' phones. The Commonwealth argues that it did not commit a discovery violation because it provided the cell phone data to Appellees as soon as it received it and did not suppress or fail to disclose any of the data. The Commonwealth insists it was not at fault for turning over the content of the phones belatedly, where the cell phones were possessed by the State Police, not the District Attorney's Office. (Commonwealth's Brief at 18-19, 26). Additionally, the Commonwealth asserts that it did not have copies of the search warrant for the phones because Appellees did not request copies; therefore, the Commonwealth argues it should not be penalized for not producing the search warrant. (*Id.* at 27). The Commonwealth concludes that the trial court improperly precluding it from using the cell phone data in its case-in-chief, and this Court must grant relief. We disagree.

"It is well-settled that, even where a cell phone has already been properly seized, a search of the contents of the phone requires a warrant." *Commonwealth v. Bowens*, 265 A.3d 730, 747 (Pa.Super. 2021), *appeal*

*denied*, ___ Pa. ___, 279 A.3d 508 (2022) (citations omitted). Rule of Criminal Procedure 208 requires that a copy of any search warrant and the affidavit in support of the warrant, shall be left "with the person from whose premises the property was taken." Pa.R.Crim.P. 208.

Here, the trial court found that a discovery violation occurred where the Commonwealth failed to disclose the search warrant used to access Appellees' cell phones. (Trial Court Opinion at 18). The court explained:

> … [T]he Commonwealth **never** disclosed the search warrant police used to gain access to [Appellees'] cellular phones. Not when the search warrant was obtained. Not when discovery was originally turned over. Not when the original tranche of information was submitted in early April. Not when the Commonwealth identified three (3) passages from [text messages] that it wanted to use. Not even up to the point where [the trial court] conducted a hearing on the Motion *in Limine* **after** jury selection had occurred.

(***Id.*** at 20) (emphasis in original).

We see no abuse of discretion concerning the court's decision that the Commonwealth's failure to turn over a copy of the search warrant for Appellees' cell phones constituted a discovery violation.[6] ***See*** Pa.R.Crim.P. 208; ***Bowes, supra***.

---

[6] Because we conclude that the Commonwealth committed a discovery violation by failing to turn over the search warrant for the cell phone information, we need not discuss whether the Commonwealth's belated production of the content of the cell phone data (which the Commonwealth claimed had been in possession of the state police) also constituted a discovery violation. We may affirm the trial court's decision based on any
*(Footnote Continued Next Page)*

Although the Commonwealth suggests that Appellees did not request the search warrant in discovery, counsel for Appellee Berrios explained at the hearing:

> There's been no report provided indicating how or upon what basis the Commonwealth had to enter the phones. There's no indication if any search warrant was requested, sought, or obtained to gain access to that information.
>
> So we're basically—we're in the dark relative to how these phones were accessed and whether or not the Commonwealth even had a right to access them. There's no mention anywhere in the discovery of attempting to download or extricate information from those phones.

(N.T. Hearing at 18-19). Counsel for Appellee Batista echoed that argument, indicating that the police report mentioned a search warrant for the vehicle, but it did not "make any mention about obtaining a search warrant for the phones or securing consent to search the phones." (**Id.** at 22). Counsel for Appellee Berrios reiterated that there was "no mention of a search warrant for phones or an attempt to access those phones until…extremely late in the game." (**Id.** at 23-24). Under these circumstances, the Commonwealth's suggestion that Appellees failed to request a search warrant that they were unaware existed appears disingenuous. As the trial court observed, "[h]ow could [Appellees] file a suppression motion if they don't even have the search warrant in discovery in order to ascertain whether the search warrant was

_____

ground supported by the record. **See Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 286 A.3d 213 (2022).

proper or not?" (*Id.* at 20).

Thus, the trial court precluded the Commonwealth from using the text messages in its case-in-chief, but the court would "leave the door open for using the text messages on rebuttal if [it gave] defense a copy of the search warrant" that day. (*Id.* at 24). In that situation, the court stated that it would "look at any constitutional arguments…regarding suppression of that information," and, if there was not a valid suppression issue, the court would allow the texts to be used on rebuttal, but not the case in chief. (*Id.*)

Notably, the court's preclusion of this evidence from the Commonwealth's case-in-chief did not result in the dismissal of any charges. *Smith, supra*. Further, as we have explained, a continuance would have been inappropriate under the circumstances of this case.[7] Rather, the court provided a remedy that was "just under the circumstances." *See* Pa.R.Crim.P. 573(E). We cannot say that the court abused its discretion in ruling on Appellee's motion *in limine* in this case. *See Belani, supra*. Accordingly, the Commonwealth is not entitled to relief on appeal, and we affirm.

Orders affirmed.

Judge Colins joins this memorandum.

Judge McLaughlin concurs in the result.

---

[7] We further note that the "phone dumps" turned over in the month of trial contained "nine gigabytes of information" or "over six million pages." (N.T. Hearing at 26).

J-S43023-23
J-S43024-23
J-S43025-23


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 01/03/2024