J-A22037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| QUINCY FUQUA | : | |
| | : | |
| Appellant | : | No. 1419 WDA 2022 |

Appeal from the Judgment of Sentence Entered July 25, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009484-2017

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: March 12, 2024**

Appellant, Quincy Fuqua, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his jury trial conviction for first degree murder.[1] We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with first degree murder in connection with the killing of his paramour, Makebia Morgan ("Victim"). On September 18, 2017, the court appointed the Office of Conflict Counsel to represent Appellant. Attorney Richard Narvin entered his appearance on Appellant's behalf on January 17, 2018. On March 21, 2018, the court granted Appellant's request for an independent psychiatric evaluation and permitted counsel to

---

[1] 18 Pa.C.S.A. § 2502(a).

retain Dr. Stephen Zerby for this purpose.

On July 26, 2019, Appellant filed a notice of mental infirmity, notifying the Commonwealth that the defense intended to call Dr. Zerby to testify that Appellant was suffering from a psychotic episode at the time of the murder. On October 29, 2019, the Commonwealth filed a motion seeking an order for Appellant to be evaluated by the Commonwealth's expert, Dr. Bruce Wright, and the court granted the motion on the same day. On September 2, 2019, Appellant filed a motion to appoint a new expert witness. Appellant represented that Dr. Zerby, for reasons unrelated to the case, withdrew from further participation in the case. Appellant asked the court to appoint Dr. Alan Pass as an expert, and the court granted this motion on September 3, 2020. On January 4, 2021, Attorney Narvin retired from the Office of Conflict Counsel and Appellant's case was transitioned to Attorney Matthew Capan, who entered his appearance on February 24, 2021. Nevertheless, Attorney Narvin continued to assist with Appellant's case on a *pro bono* basis.

On February 25, 2021, Appellant filed another motion to appoint an expert witness. Appellant represented in his motion that Dr. Pass declined to continue to work on Appellant's case because he believed that an expert with a specialty in substance abuse assessment and treatment should be utilized. Dr. Pass further recommended that the Commonwealth's expert should conduct an independent evaluation of Appellant prior to the disclosure of the defense expert report. Appellant requested that the court appoint Dr. James

Lim, who had the requisite qualification and was willing to perform an evaluation of Appellant. Appellant further asked the court to require the Commonwealth's expert to complete an independent evaluation of Appellant prior to disclosing the defense expert's report, as per Dr. Pass' recommendation. Appellant averred that such a process would ensure the reliability of the evaluations by preventing the Commonwealth's expert from merely editorializing the defense expert's report. Appellant alleged that several experts, including Dr. Pass, had expressed that they would require assurance of an independent Commonwealth evaluation prior to accepting the case.

The Commonwealth filed a response, opposing the portion of the motion that requested the court to order the Commonwealth to conduct an independent evaluation ahead of the defense report. Specifically, the Commonwealth averred that it needed to review the defense expert report in consultation with potential Commonwealth experts to properly evaluate whether to retain its own expert for trial. On March 8, 2021, the court granted Appellant's motion to retain Dr. Lim as a defense expert but denied the request to order the Commonwealth to complete an independent evaluation.

On August 10, 2021, Attorney Narvin filed a motion seeking appointment as co-counsel. In his petition, Attorney Narvin averred that: he had been assisting Appellant on a *pro bono* basis since he retired from the Office of Conflict Counsel in January of 2021; Appellant and Attorney Capan

wanted Attorney Narvin to continue his involvement in the case; and Appellant's case had required more time than Attorney Narvin originally anticipated. Based on the foregoing, Attorney Narvin asked the court to appoint him as co-counsel for Appellant with counsel fees to be paid by Allegheny County. On August 26, 2021, the court denied Attorney Narvin's motion. On September 3, 2021, Attorney Narvin filed a motion seeking to be appointed as an expert consultant "for matters such as expert witness consultation, counseling the defendant and his family, legal consulting, and preparing the defense's case for court." (Motion for Appointment of Expert Consultant, filed 9/3/21, at 3) (unpaginated). The court denied the motion on September 13, 2021.

On January 12, 2022, Attorney Capan filed a motion to withdraw as counsel. On January 15, 2022, Attorney Narvin filed a motion to withdraw as counsel. Attorney Capan's motion relayed that in December 2021, Attorney Narvin and Attorney Capan met with Appellant on Microsoft Teams to discuss his case. During this meeting, Appellant expressed dissatisfaction with their representation and asked that they file motions to withdraw as counsel. Both attorneys attempted to discuss and resolve Appellant's issues, but Appellant ended the meeting and stated that he would no longer speak to either attorney. Attorney Narvin's motion further stated that after the court denied his request to be appointed as co-counsel or as an expert consultant, he continued to work on Appellant's case on a *pro bono* basis. However, due to

- 4 -

Appellant's subsequent dissatisfaction with Attorney Narvin's assistance, Attorney Narvin filed the motion to withdraw his appearance. Before the court ruled on the motions to withdraw, Attorney Joseph Hudak entered his appearance on Appellant's behalf on February 27, 2022. On February 28, 2022, Attorney Capan filed an amended motion to withdraw, noting that Appellant had retained private counsel. On March 15, 2022, the court granted Attorney Narvin and Attorney Capan's motions to withdraw.

On June 14, 2022, prior to trial, Attorney Hudak indicated that he would be pursuing a self-defense theory at trial instead of a defense involving Appellant's mental health. The following exchange took place:

> The court: Do you suffer from any mental illness or infirmity which would in any way limit your ability to participate in these proceedings?
>
> [Appellant]: No, your honor.
>
> The court: We have had over the course of time some Behavior Assessment Unit evaluations and in the most recent of those, you were deemed to be competent. So I'm going to ask you now: you are presently taking medications, correct?
>
> [Appellant]: Yes, your honor.
>
> The court: And while taking those medications, are you able to make decisions in your own best interest?
>
> [Appellant]: Yes, your honor.
>
> The court: Are you able to carry on conversations with others and understand what others are talking to you about?

[Appellant]: Yes, your honor.

The court: And specifically, what I'm most concerned about here is you've been able to speak with your attorney Mr. Hudak and you have been able to ask him questions and talk to him about your case and he has been able to explain to you or answer your questions in ways you understand, correct?

[Appellant]: Yes.

The court: Mr. Hudak, you have been representing [Appellant] now for a few months?

Mr. Hudak: Yes.

The court: You've had a chance to meet with him on a number of occasions?

Mr. Hudak: Yes.

The court: During that time you've had a chance to respond to any questions he might ask of you and to ask him questions, as well, correct?

Mr. Hudak: Yes.

The court: Do you believe today with the medications he's taking and whatever his mental health diagnosis may be, that he is competent to proceed?

Mr. Hudak: Yes, your honor.

The court: And that he is able to make decisions in his own best interest?

Mr. Hudak: Yes, your honor.

The court: [Appellant], just to finish this line of questioning. It is my line of understanding that you do have some mental health

diagnosis, correct?

[Appellant]: Yes.

The court: And that you are taking some medication for that diagnosis to treat you?

[Appellant]: Yes, ma'am.

The court: And you're taking that medication as it is prescribed for you?

[Appellant]: Yes.

The court: While taking that medication, you are competent — that is you are able to make decisions in your own best interests?

[Appellant]: Yes.

* * *

The court: You understand there may be defenses to you?

[Appellant]: Yes.

The court: You talked to Mr. Hudak about that?

[Appellant]: Yes.

The court: You talked to him about his trial strategy?

[Appellant]: Yes.

The court: You understand that it is his job as your lawyer to decide on that trial strategy, not yours?

[Appellant]: Yes.

The court: But you also understand you have the right to have input, that is discuss your entire case with him?

[Appellant]:   Yes.

The court:   You've had the chance to talk to him about that trial strategy?

[Appellant]:   Yes.

*   *   *

The court:   I think I understand where you're going here. So the example I used when I talked to you about defenses — the example I used was with regard to the possibility you heard us talking about here of your raising a defense in this case of self-defense and you talked to Mr. Hudak about that?

[Appellant]:   Yes, ma'am.

The court:   You understand that there are other potential defenses you could raise and one of them would be specific to your mental health at the time?

[Appellant]:   Yes, ma'am.

The court:   And you have talked with Mr. Hudak about that. I'm not asking what you talked about or what advice he's given you. You talked to him about that?

[Appellant]:   Yes.

The court:   And you understand what that defense would involve?

[Appellant]:   Yes, ma'am.

The court:   And you had the chance to discuss that defense not just with Mr. Hudak, but prior to Mr. Hudak, you were represented by some other attorneys. Have you had the chance to talk to those attorneys, as well?

[Appellant]: Yes, ma'am.

The court: And you more recently talked to Mr. Hudak about the possibility of raising some defense with regard to your mental health?

[Appellant]: Yes.

The court: And again, you had the chance to ask him questions about that and you had the chance to consider that defense versus other potential defenses and you're satisfied with the information that he's provided to you regarding the defense that he's choosing in this case which was self-defense.

[Appellant]: Yes, ma'am.

The court: So it is my understanding that you and Mr. Hudak have talked about other potential defenses and specifically the potential defense of what is called diminished capacity and you and Mr. Hudak have considered that and weighed it against other potential defenses. And it's also my understanding that at this time you are satisfied with Mr. Hudak and the defense strategy that he has decided upon in your case, is that correct?

[Appellant]: Yes, ma'am.

The court: So you understand that at this point in time, Mr. Hudak has not indicated any intention to raise any type of mental health defense?

[Appellant]: Yes, ma'am.

The court: You're satisfied with his services?

[Appellant]: Yes.

(N.T. Pretrial Hearing, 6/14/22, at 30-46).

A jury trial commenced shortly thereafter, during which Attorney Hudak argued that Appellant acted in self-defense during the incident that resulted in Victim's death. Evidence of Appellant's mental health history was largely not introduced at trial except to give context to why the police responded to Appellant's residence. When a witness began speaking about Appellant's mental health history, the Commonwealth objected. At sidebar, when the court questioned Attorney Hudak regarding the relevance of the evidence to his defense, Attorney Hudak responded, "I agree. I don't think it has relevance." (N.T. Trial, 6/16/22, at 149). When the witness again responded to a question by mentioning Appellant's mental health, the Commonwealth moved to strike the witness' testimony. Attorney Hudak did not argue against the Commonwealth's objection but offered to lead the witness to prevent further mention of Appellant's mental health. Following this discussion, the court made the following statement to the jury:

> The court:     So, ladies and gentleman, the witness' last answer, I am going to strike from the record. It was not responsive to the question. The defendant's history of mental illness is really not relevant to the defense in this case. The defense in this case is self-defense.

(N.T. Trial, 6/16/22, at 152). Attorney Hudak did not object to the court's instruction.

The jury convicted Appellant of first-degree murder on June 21, 2022. On July 25, 2022, the court sentenced Appellant to life imprisonment. Appellant filed a post-sentence motion on the same day, which the court

denied on November 8, 2022. On November 29, 2022, Appellant timely filed

a notice of appeal. On December 1, 2022, the court ordered Appellant to file

a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and

Appellant timely complied on December 8, 2022.

Appellant raises the following issues for our review:

Whether the trial court erred and/or abused its discretion, when it denied [Appellant's] motion requesting the Commonwealth conduct an independent evaluation process after the Commonwealth had initially filed a motion to permit an evaluation. The Commonwealth changed course, [and] thereby prejudiced the defense in creating a hardship with securing experts who refused to participate under those conditions.

Whether the trial court erred and/or abused its discretion or erred as a matter of law in violation of [Appellant's] 6th Amendment rights, when it denied [Appellant's] motion to continue the appointment of [Attorney] Narvin without explanation, when the request was based on a defendant who was known, to the court, to have mental health challenges. The motion had referenced that counsel had remained on the case *pro bono* after retiring as Chief Counsel of the Allegheny County Office of Conflict Counsel. [Attorney] Narvin had provided notice of a mental health defense and had just lost his expert after the report was turned over; the court's refusal to continue the appointment essentially hamstrung the mental health defense and spurred the breakdown of the relationship with [Attorney] Capan, causing the withdraw by the Conflict Counsel Office and created the ensuing issue with the subsequent change of defense.

Whether the trial court erred and/or abused its discretion when it allowed private counsel to enter his appearance and change the defense, after having notice of mental infirmity and/or expert evidence of a mental condition; this was relevant considering its own decision which spurred [Attorney] Narvin's exit. New counsel came on with insufficient time to digest the information and abandoned

the original strategy in favor of a baseless assertion of self-defense.

Whether the trial court erred and/or abused its discretion, or erred as a matter of law when it asked during [Appellant's] colloquy, if [Appellant] had considered a mental health defense verses other potential defenses, this inartful phrased question seemingly pitted one defense against the other and bolstered that the two defenses were mutually exclusive and validated the impression that the options were limited to either-or defenses but not both.

Whether the trial court erred and/or abused its discretion or erred as a matter of law when it stated to [Appellant], "You understand that it is his job as your lawyer to decide on that trial strategy, not yours." This statement worked to negate [Appellant's] autonomy, chilled necessary questions and did bolster [Appellant's] impression that counsel solely had the power to make the decision and that counsel was correct and working to his advantage.

Whether the trial court abused its discretion or erred as a matter of law when it said, "So, ladies and gentlemen, the witness's last answer I'm going to strike from the record. It was not responsive to the question. The defendant's history of mental illness is really not relevant to the defense in this case. The defense in this case is self-defense."

Whether [Appellant] is entitled to relief from his conviction because of the cumulative effect of these errors.

(Appellant's Brief at 3-6).

At the outset, we observe that "decisions involving discovery in criminal cases lie within the discretion of the trial court. We will not reverse a trial court's order absent an abuse of that discretion." *Commonwealth v. Alston*, 233 A.3d 795, 804 (Pa.Super. 2020) (citation omitted). Our Supreme Court has repeatedly emphasized that "[i]t is well established in this Commonwealth that the purpose of the discovery rules is to permit the parties in a criminal

matter to be prepared for trial. Trial by ambush is contrary to the spirit and letter of those rules and cannot be condoned." ***Commonwealth v. Shelton***, 536 Pa. 559, 564-65, 640 A.2d 892, 895 (1994) (citation omitted).

Additionally, the decision of whether to appoint new counsel lies within the sound discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion. ***See Commonwealth v. Cook***, 597 Pa. 572, 610, 952 A.2d 594, 617 (2008). "While an indigent is entitled to free counsel, he is not entitled to free counsel of his own choosing." ***Id.*** (citation omitted). A request to change counsel "by a defendant to whom counsel has been assigned, shall not be granted except for substantial reasons. To satisfy this standard, a defendant must demonstrate that he has an irreconcilable difference with counsel that precludes counsel from representing him." ***Commonwealth v. Spotz***, 562 Pa. 498, 518, 756 A.2d 1139, 1150 (2000), *cert. denied*, 532 U.S. 932, 121 S.Ct. 1381, 149 L.Ed.2d 307 (2001). Nevertheless, "a defendant has a constitutional right to choose any lawyer he may desire, at his own cost and expense." ***Commonwealth v. Rucker***, 563 Pa. 347, 349–50, 761 A.2d 541, 542 (2000).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jill E. Rangos, we conclude that Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. Specifically, regarding Appellant's first issue, the court stated that it did not

abuse its discretion when it denied Appellant's request to delay the disclosure of the defense expert report until after the Commonwealth completed an evaluation. The court noted that pursuant to Pa.R.Crim.P. 573, the court had discretion to order Appellant to disclose the defense expert report so that the Commonwealth could adequately prepare for trial. *See Shelton, supra*; *Alston, supra*. Additionally, Appellant failed to establish that he suffered any prejudice as a result of the court's ruling.[2] (**See** Trial Court Opinion, filed 6/21/22, at 3-4).

Regarding Appellant's second claim that the court erred in denying Attorney Narvin's motion to be appointed as co-counsel, the court found that Appellant was not entitled to court-appointed counsel of his choosing and there was no indication that Appellant's appointed counsel was not competent or zealously pursing Appellant's interests. *See Cook, supra*; *Spotz, supra*.

---

[2] Appellant ultimately decided not to pursue a defense involving his mental health at trial. Neither Appellant nor the Commonwealth presented any experts at trial regarding Appellant's mental health. Further, the record belies Appellant's claim that the court's ruling resulted in Appellant being unable to find an expert, which in turn contributed to the breakdown of his attorney-client relationship with Attorney Narvin and Attorney Capan. Rather, the record shows that Appellant asked the court to appoint Dr. Lim as a defense expert. Appellant stated that Dr. Lim had the requisite qualifications to serve as an expert in Appellant's case. Appellant did not indicate that Dr. Lim conditioned his involvement in the case on reviewing an independent evaluation by the Commonwealth. Additionally, nothing in the record indicates that Dr. Lim refused to continue working on Appellant's case because the court denied Appellant's request for an independent evaluation by the Commonwealth. Likewise, there is no indication in the record that Appellant's relationship with Attorney Capan or Attorney Narvin deteriorated as a result of this ruling.

- 14 -

Additionally, Appellant did not suffer any prejudice as a result of this ruling because Appellant subsequently hired private counsel who represented him at trial.[3]  (*See* Trial Court Opinion at 4-5).

With respect to Appellant's third issue that the court erred in permitting Appellant to retain new counsel and change the defense strategy, the court noted that Appellant was deemed competent and he had retained Attorney Hudak four months prior to trial.  ***See Rucker, supra***.  The court conducted an extensive colloquy during which Appellant affirmed that he was competent to make decisions in his own best interests and was fully satisfied with Attorney Hudak's representation.  The court further explained that beyond this inquiry, it is not the court's role to direct Appellant's defense or trial strategies. (*See* Trial Court Opinion at 5).

In response to Appellant's fourth and fifth issues combined, the court explained that it properly asked questions to ascertain whether Appellant was making informed decisions without unnecessarily intruding into the attorney-client relationship.  The court's questions did not improperly imply to Appellant

_____

[3] The record does not support Appellant's contention that the court's denial of Attorney Narvin's motion to be appointed as co-counsel resulted in the breakdown of Appellant's relationship with Attorney Narvin and Attorney Capan.  To the contrary, Attorney Narvin indicated in his motion to withdraw as counsel that he continued to work on Appellant's case on a *pro bono* basis even after the court denied his motion to be appointed as co-counsel. Attorney Narvin and Attorney Capan both indicated that the basis of their motions to withdraw was a subsequent meeting with Appellant where Appellant indicated that he was no longer satisfied with their representation and refused to engage with them further.

- 15 -

that self-defense and mental health defenses were mutually exclusive. Rather, the court inquired whether Appellant had discussed both defenses with his attorney and was satisfied with the choices that counsel was pursuing on his behalf. The court further ascertained that Appellant was aware that although it was counsel's role to determine trial strategy, Appellant had the right to fully discuss and give his input to counsel regarding the chosen strategy. Once the court was satisfied that Appellant was aware of his rights and was making informed decisions, the court properly did not advise or instruct Appellant any further regarding trial strategies. (*See id.* at 6-7).

Regarding Appellant's sixth claim, the court explained that it properly excluded evidence of Appellant's history of mental illness because Appellant chose not to pursue a defense involving his mental health at trial. Additionally, Appellant's counsel conceded that evidence of Appellant's mental health was not relevant to his defense.[4] (*See* Trial Court Opinion at 7). In response to

_____

[4] To the extent Appellant is attempting to raise an ineffective assistance of counsel claim, this issue must wait to be addressed on collateral review. *See Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002) (explaining general rule that petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review). Our Supreme Court has recognized two very limited exceptions to the general rule in *Grant* regarding when trial courts may review ineffective assistance of counsel claims: (1) in extraordinary circumstances where claims of trial counsel's ineffectiveness are apparent from the record and immediate consideration best serves the interests of justice and/or (2) where there is good cause shown and review of the claim is preceded by a waiver of the right to seek collateral review. *Commonwealth v. Holmes*, 621 Pa. 595, 598-99, 79 A.3d 562, 563-64 (2013). Ineffectiveness claims may be raised on direct appeal only if: (1) the
*(Footnote Continued Next Page)*

Appellant's seventh claim that he suffered cumulative prejudice, the court found that Appellant failed to establish that his claims of error had merit and as such, they cannot form the basis for a claim of cumulative prejudice. (**See** **id.** at 8). We agree with the trial court that all of Appellant's issues on appeal are without merit. Accordingly, we affirm the judgment of sentence on the basis of the trial court's opinion.[5]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/12/2024

_____

appellant raised his claim(s) in a post-sentence motion; (2) an evidentiary hearing was held on the claim(s); and (3) a record devoted to the claim(s) has been developed. **Commonwealth v. Leverette**, 911 A.2d 998, 1004 (Pa.Super. 2006). Here, Appellant failed to satisfy the requirements of **Holmes** and **Leverette**. Therefore, this appeal is not the proper time to raise or address any ineffectiveness of counsel claim.

[5] We direct the parties to attach a copy of the trial court's opinion to any future filings involving this appeal.

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA       CRIMINAL DIVISION

v.                                 CP-02-CR-09484-2017

QUINCY FUQUA

**OPINION**

**RANGOS, J.**                                    March 3, 2023

On June 21, 2022, a jury convicted Appellant, Quincy Fuqua, of one count of Murder of the First Degree.[1] This Court sentenced Appellant on July 25, 2022, to life imprisonment. This Court denied Appellant's Amended Post-Sentence Motion on November 7, 2022. Appellant filed a Notice of Appeal on November 27, 2022, and his Statement of Errors Complained of on Appeal on December 3, 2022.

**MATTERS COMPLAINED OF ON APPEAL**

Appellant alleges nine issues on appeal. Appellant alleges that this Court erred in denying a Motion requesting the Commonwealth's witness conduct an independent evaluation before reviewing the defense expert's report. Next, Appellant alleges that this Court erred in failing to appoint attorney Richard Narvin as co-counsel upon his retirement from Office of Conflict Counsel. Appellant further alleges this court erred in failing to appoint Narvin as an "expert consultant." Appellant alleges that this Court erred in permitting private counsel to change the defense strategy. Additionally, Appellant alleges that this Court erred in its colloquy of Appellant by suggesting that self-defense and mental

---

[1] 18 Pa.C.S. § 2502 (a).

health defenses were mutually exclusive. Appellant alleges that this Court's statement, that Appellant's attorney, and not Appellant himself, determines trial strategy, negated Appellant's autonomy over his case. Appellant asserts that this Court's colloquy was incomplete because it did not clearly explain to Appellant the options available to him regarding trial strategy. Appellant alleges that this Court erred in striking a witness' response and stating to the jury that Appellant's mental health history is irrelevant because the defense strategy in this case was self-defense. Lastly, Appellant alleges that he is entitled to relief as a result of the cumulative effect of these errors. (Statement of Errors to be Raised on Appeal, pp. 2-6).

## DISCUSSION

Appellant alleges that the Court erred in denying a Motion requesting the Commonwealth's witness conduct an independent evaluation before reviewing the defense expert's report. This request is governed by Pennsylvania Rule of Criminal Procedure 573, which states, in relevant part:

> If an expert whom the defendant intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare and the defendant disclose a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa. R. Crim. P. 573. Appellant was required to share the defense evaluation by its expert so that the Commonwealth could adequately prepare for trial. Once the report was received by the Commonwealth, it could choose whether to provide it to its own expert, if one was retained. The Commonwealth's decision to retain its own expert would be based, at least in part, on what was contained in the defense expert report. Appellant's claim that the Commonwealth's subsequent expert report is flawed as a result of failing to conduct an examination without reviewing defense expert's report is an argument that goes to the weight and not to the admissibility of the Commonwealth's

3

report. Appellant's argument that he had difficulty obtaining an expert as a result of this Court's decision has no basis in the record and is moot because Appellant clearly found an expert.

Next, Appellant alleges that this Court erred in failing to appoint attorney Richard Narvin as co-counsel upon his retirement from Office of Conflict Counsel. Appellant further alleges this court erred in failing to appoint Mr. Narvin as an "expert consultant." Appellant alleges he wished to continue to be represented by Narvin following Narvin's retirement from the Office of Conflict Counsel and this Court's failure to permit him to act in that capacity ultimately led to a breakdown in the relationship between Appellant and the Office of Conflict Counsel.

"[A]lthough the right to counsel is absolute, there is no absolute right to a particular counsel." *Commonwealth v. Johnson*, 236 A.2d 805 (Pa. 1968). Upon the retirement of Attorney Narvin, Appellant's case was transitioned to another lawyer within the Office of Conflict Counsel. Seven months after his retirement from the Office of Conflict Counsel, Narvin filed a motion indicating that he had continued to work on the case *pro bono* and would like to be appointed as co-counsel. This Court notes that the Office of Conflict Counsel did not file or assent to this motion. After Narvin retired, Appellant remained represented by other counsel within the Office of Conflict Counsel, who continued to zealously advocate on behalf of Appellant. Since Appellant is not entitled to court-appointed counsel of his choosing, and Appellant did not suffer a lack of zealous representation, this Court did not err in denying the motion to appoint Narvin as co-counsel.

Likewise, Appellant's attempt to backdoor Narvin's appointment by calling him an expert consultant must fail. The purported expertise Narvin suggested was the relationship he had developed with Appellant. Once again, since Appellant did not suffer a lack of competent, zealous representation, this Court did not err in denying the motion to appoint Narvin as co-counsel disguised as expert consultant. Furthermore, the issue of whether to appoint Attorney Narvin, after his retirement, as co-counsel with another attorney from the Office of Conflict Counsel became moot

4

once Appellant retained private counsel, a decision Appellant may have made even if Attorney Narvin had been appointed.

Appellant alleges that this Court erred in permitting private counsel to change the defense strategy. On February 27, 2022, attorney Joseph Hudak entered his appearance as privately retained counsel for Appellant, four months prior to the trial.[2] Appellant implies that this Court should have bound Attorney Hudak to the trial strategy of his predecessor.[3] It is not the role of a trial court to tell a privately retained attorney how to present his case. To the contrary, it is the ethical duty of an attorney to "reasonably consult with the client about the means by which the client's objectives are to be accomplished." PA ST RPC Rule 1.4. Prior to trial, this Court conducted a colloquy with Appellant regarding his satisfaction with his new attorney and with his trial strategy. Appellant indicated that he discussed both self-defense and diminished capacity with Attorney Hudak, that Appellant agreed with the decision to pursue the trial strategy of self-defense and not diminished capacity, and that he was satisfied with Attorney Hudak's representation. (Trial transcript, volume I, June 14, 2022, hereinafter "TT1" at 43-46). Appellant has promulgated no evidence that Attorney Hudak breached his ethical duty, and no adequate reason for this Court to interfere with the attorney-client relationship.

Appellant appears to be attempting to backdoor an ineffective assistance of counsel argument by alleging that this Court permitted him to hire private counsel. Attorney Hudak, an experienced criminal defense attorney, chose to pursue a defense theory of self-defense, which was a reasonable, although ultimately unsuccessful, trial strategy. Counsel's strategic decision to argue self-defense rather than pursue a diminished capacity defense does not constitute ineffective assistance so long as

---

[2] Appellate counsel refers to this period as "at the last moment" in Appellant's concise statement.

[3] Although prior counsel had spent time consulting with experts, it would be pure speculation on this Court's part to conclude that counsel had chosen to pursue diminished capacity as a defense.

he had a reasonable basis for the strategy chosen. *Commonwealth v. Spotz*, 896 A.2d 1191, 1218 (Pa. 2006). Therefore, this Court did not err in "permitting" counsel to argue self-defense.

Additionally, Appellant alleges that this Court erred in its colloquy of Appellant by suggesting that self-defense and mental health defenses were mutually exclusive. As stated above, Appellant discussed both self-defense and diminished capacity with Attorney Hudak, and Appellant agreed with the decision to pursue the trial strategy of self-defense and not diminished capacity. Appellant alleges that this Court erred by not emphasizing that Appellant could pursue both a self-defense and diminished capacity. Once it was clear that Appellant and Attorney Hudak had discussed trial strategy and that Appellant was satisfied with Attorney Hudak's efforts on his behalf, this Court did not engage Appellant further out of respect for the integrity of the attorney-client privilege.

Appellant cites *Commonwealth v. Moore*, 805 A.2d 1212 (Pa. 2002) in support of his claim. However, in *Moore*, counsel was deemed ineffective for failing to inquire into defendant's mental health issues, which could have led to a diminished capacity defense concurrently presented with a self-defense case. In the matter *sub judice*, counsel was aware of Appellant's mental health and chose not to pursue diminished capacity. Appellant indicated in the colloquy that he knew that he could pursue a self-defense argument and was choosing not to do so. Appellant has failed to establish that this Court had a duty to ensure Appellant understood that he could pursue self-defense and diminished capacity simultaneously. As such, this claim has no merit.

Appellant alleges that this Court's statement, that Appellant's attorney, and not Appellant himself, determines trial strategy, negated Appellant's autonomy over his case. Appellant further asserts that this Court's colloquy was incomplete because it did not clearly explain to Appellant the options available to him regarding trial strategy. These claims may be combined for judicial economy.

> [A] defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy will not later be heard to complain that trial counsel was ineffective on the basis of that decision. *See Commonwealth v. Abu–Jamal*, 553 Pa. 485, 515, 720 A.2d

6

79, 93 (1998). To hold otherwise would allow a defendant to build into his case a ready-made ineffectiveness claim to be raised in the event of an adverse verdict.

*Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. 2002).

This Court conducted an extensive colloquy with Appellant to ensure that he fully understood his rights and the trial strategy that would be undertaken. Appellant stated that he had spoken with Attorney Hudak about the possible defenses he could pursue. (TT1 37). Appellant stated that he understood that he had the right to have input with his trial counsel, but that counsel would ultimately decide upon the trial strategy. *Id.* Appellant further stated that he understood that he had the right to choose whether to testify, regardless of the trial strategy adopted by Attorney Hudak. (TT1 39). Appellant stated that he had discussed all matters pertaining to the case with Attorney Hudak and that he was pleased with the services provided by Attorney Hudak. (TT1 39-40). Appellant specifically stated that he discussed with Attorney Hudak both self-defense and a defense related to his mental health. (TT1 43-44). Appellant stated that he had the opportunity to discuss these potential defenses and was satisfied with the defense strategy of self-defense chosen by Attorney Hudak. (TT1 45). Appellant is bound by his statements and this court did not err in its colloquy.

Penultimately, Appellant alleges that this Court erred in striking a witness' response and stating to the jury that Appellant's mental health history is irrelevant because the defense in this case was self-defense. Appellant chose not to pursue a defense based on his mental health. Counsel further indicated a desire to keep out as much as possible Appellant's mental health. (TT4 16). However, trial counsel asked Appellant a question regarding Appellant's history of mental illness. (TT4 15). Since this testimony was not relevant to Appellant's self-defense strategy, this Court correctly sustained the objection and struck the answer from the record. ("Relevant evidence then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible." McCormick, Evidence § 185 at 437-38 (2nd Ed. 1972).

7

Lastly, Appellant alleges that he is entitled to relief as a result of the cumulative effect of these errors. No number of failed claims may collectively warrant relief. *Commonwealth v. Busanet*, 54 A.3d 35, 75 (Pa. 2012). When the failure of individual claims is based upon a lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed. *Id.* Appellant's claims are without merit. As such, Appellant cannot aggregate the cumulative effect of the alleged errors.

## CONCLUSION

For the above reasons, no reversible error occurred, and the findings and rulings of this Court should be AFFIRMED.

BY THE COURT:

_____ J.
JILL E. RANGOS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this OPINION was mailed to the following individuals by first class mail, postage prepaid on March 3, 2023.

Carmen Robinson
84 Roberts Street
Pittsburgh, PA 15219

Michael Streily
Office of the District Attorney
401 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219

_____

James J. Robertson, Law clerk for Jill E. Rangos